# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39415

| | | |
|---|---|---|
| AMERICAN BANK, a Montana banking corporation, | ) ) ) | |
| Plaintiff-Cross Defendant-Appellant-Cross Respondent, | ) ) ) | Coeur d'Alene, April 2013 Term |
| v. | ) ) | 2013 Opinion No. 89 |
| WADSWORTH GOLF CONSTRUCTION COMPANY OF THE SOUTHWEST, a Delaware corporation, | ) ) ) ) | Filed: August 16, 2013<br><br>Stephen Kenyon, Clerk |
| Defendant-Cross Defendant-Respondent-Cross Appellant, | ) ) ) | |
| and | ) ) | |
| TAYLOR ENGINEERING, INC., a Washington corporation, | ) ) ) | |
| Defendant-Third Party Plaintiff, | ) ) | |
| and | ) ) | |
| BRN DEVELOPMENT, INC., an Idaho corporation; BRN INVESTMENTS, LLC, an Idaho limited liability company; LAKE VIEW AG, a Lichtenstein company; BRN-LAKE VIEW JOINT VENTURE, an Idaho general partnership; ROBERT LEVIN Trustee for the ROLAND M. CASATI FAMILY TRUST, dated June 5, 2008; E. RYKER YOUNG, Trustee for the E. RYKER YOUNG REVOCABLE TRUST; MARSHALL CHESROWN, a single man; THORCO, INC., an Idaho corporation; CONSOLIDATED SUPPLY COMPANY, an Oregon corporation; THE TURF CORPORATION, an Idaho corporation; POLIN & YOUNG CONSTRUCTION, INC., an Idaho corporation; PRECISION IRRIGATION , INC., an Arizona | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

1

**corporation; and**                                     )
                                                         )
    **Defendants-Cross Defendants,**    )
                                                         )
                                                         )
**and**                                                  )
                                                         )
**IDAHO ROOFING SPECIALIST, LLC, an**                    )
**Idaho limited liability company;**                     )
**INTERSTATE CONCRETE & ASPHALT**                        )
**COMPANY, an Idaho corporation;**                       )
**CONCRETE FINISHING, INC., an Arizona**                 )
**corporation; and SPOKANE WILBERT**                     )
**VAULT CO., a Washington corporation, dba**             )
**WILBERT PRECAST,**                                     )
                                                         )
    **Defendants,**                       )
                                                         )
**and**                                                  )
                                                         )
**ACI NORTHWEST, INC., an Idaho**                        )
**corporation,**                                         )
                                                         )
    **Third Party Defendant-Crossclaimant,**  )
                                                         )
**and**                                                  )
                                                         )
**STRATA, INC., an Idaho corporation; and**              )
**SUNDANCE INVESTMENTS, LLP, a**                         )
**limited liability partnership,**                       )
                                                         )
    **Third Party Defendants.**           )
_____ )

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County.  Hon. John P. Luster, District Judge.

The decision of the district court allowing Wadsworth to recover against the lien release bond is <u>reversed</u> and the judgment in favor of Wadsworth is <u>vacated</u>.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellant.  Charles Clayton Gill argued.

Witherspoon Kelley, Coeur d'Alene, for respondent.  Edward J. Anson argued.

_____

2

HORTON, Justice.

This appeal relates to a mechanic's lien filed against the Black Rock North Development in Coeur d'Alene, Idaho, arising from an uncompleted golf course community development. American Bank (the Bank) was the lender to BRN Development, Inc. (BRN). BRN hired Wadsworth Golf Construction Company of the Southwest (Wadsworth) to construct a golf course. BRN failed to pay Wadsworth for a portion of the work it performed, and Wadsworth filed a mechanic's lien against the property. BRN defaulted on the loan, and the Bank initiated foreclosure proceedings. Wadsworth's claim of lien was subordinate to the Bank's mortgage interest in the property. In order to proceed with a foreclosure sale, the Bank posted a lien release bond in order to secure the district court's order releasing Wadsworth's lien. The Bank's credit bid was sufficient to make it the successful bidder at the foreclosure sale.

The district court ruled that priority of the parties' claims against the property was irrelevant once the property was replaced by the lien release bond as security for Wadsworth's claim and the Bank (by way of the bond) was responsible for payment of Wadsworth's lien claim.

The Bank appeals the decision of the district court, arguing that Wadsworth should have been prevented from recovering against the lien release bond because its interest would have been extinguished if it had attempted to foreclose its mechanic's lien and the bond merely served as substitute security in place of the property. The Bank further argues that Wadsworth should have been barred from recovery because it was not registered under the Idaho Contractor's Registration Act (ICRA) at all times it worked on the project and it hired subcontractors who were likewise unregistered. Wadsworth cross-appeals, arguing the district court erred in holding that Wadsworth waived its right to file a lien for the unpaid retainage on the contract. Wadsworth also argues that it is entitled to additional attorney's fees for the proceedings in district court and attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

BRN planned to develop a high-end residential golf course community. The golf course, a central feature of the development, was situated on two hundred acres in the thousand-acre development. BRN entered into a financing agreement with the Bank in which the Bank agreed to loan BRN $15,000,000 for the development of the project. The Bank recorded its mortgage on February 6, 2007. The loan documents specified that the Bank had a first priority mortgage on

3

the property and required BRN to certify that it had received lien waivers from any person or entity that had provided labor or materials on the project before loan funds for progress payments would be disbursed.

BRN then hired Wadsworth to construct the golf course. Wadsworth began work in 2006, shaping two holes of the course from October through December before it was forced to suspend work due to weather conditions. This work was done before a final contract was executed, as Wadsworth relied on a conditional letter of intent as it negotiated the final contract with BRN. Wadsworth was not registered under the ICRA at this time. Wadsworth registered under the ICRA on January 9, 2007, prior to its executing the final contract with BRN on January 27, 2007. The final contract provided that Wadsworth would be paid $9,796,938 for its work on the golf course construction.

Under the contract, Wadsworth was entitled to monthly progress payments for work performed and materials supplied. The contract specified that five percent of the progress payments would be withheld as retainage to ensure Wadsworth's completion of any required warranty work. In order to receive these monthly progress payments, Wadsworth was required to submit "in a form satisfactory to [BRN], partial lien releases . . . ." The contract incorporated several documents by reference that were attached as exhibits. One of these documents was entitled "Exhibit 'B': Conditional Lien Waiver, Release, and Subordination" (the BRN Release). The BRN Release waived any right to lien the property for work performed or materials furnished through the date of receipt of the progress payment. During the course of its work on the project, Wadsworth submitted twenty-five progress payment applications to BRN. All but six of those applications were accompanied by a partial lien release in a form prepared by Wadsworth (the Wadsworth Release), rather than the BRN Release. The most significant difference between those forms was that the Wadsworth Release did not waive Wadsworth's right to lien for unpaid retainage while the BRN Release did.

BRN defaulted on its loan. Prior to the default, BRN's last progress payment to Wadsworth covered all work performed and materials supplied through July 31, 2008. The last lien release executed by Wadsworth covered work through August 31, 2008, but Wadsworth did not receive a complete progress payment. Both of these payment applications were accompanied by a Wadsworth Release. Wadsworth's last payment application that was accompanied by a BRN Release was submitted on March 10, 2008.

4

On January 6, 2009, Wadsworth filed a claim of lien, asserting that it had provided $2,329,439.72 worth of work and materials for which it was not paid. This sum included retainage that had been withheld since the beginning of the project totaling $343,985. On April 1, 2009, the Bank initiated a foreclosure action, naming Wadsworth as a defendant in order to establish the priority of its lien. Wadsworth counterclaimed, asserting that its mechanic's lien was prior and superior to the mortgage. In order to clear the way for a foreclosure sale of the property, the Bank purchased a Release of Mechanic's Lien Bond (the lien release bond). Upon the Bank's motion, the district court released Wadsworth's mechanic's lien against the property in accordance with I.C. § 45-521.

Both parties moved for partial summary judgment. The Bank argued that it was entitled to judgment as a matter of law because its superior priority prevented Wadsworth from recovering against the lien release bond. The district court denied the Bank's motion and granted Wadsworth's motion. The district court concluded as a matter of law the issue of priority of the parties' interests in the property was irrelevant to Wadsworth's right of recovery against the lien release bond.

Following its order granting Wadsworth's motion for partial summary judgment, the district court entered an order establishing the amount BRN owed the Bank and directing that the property be sold. At the May 19, 2011, foreclosure sale, the Bank was the highest bidder with its credit bid of $18,682,767.78. This sum represented the balance BRN owed the Bank, costs of sale, sheriff's fees and receiver's fees. Thus, the sale left no surplus proceeds for junior lienholders.

The district court conducted a two-day bench trial in early May of 2011 in order to determine the validity of Wadsworth's lien and the amount Wadsworth was entitled to recover. In its Findings of Fact and Conclusions of Law entered after the foreclosure sale, the district court held that Wadsworth's lien was valid and awarded Wadsworth $1,845,697.78 in principal, $371,368.82 in prejudgment interest, and $208,417.47 in costs and attorney fees, for a total judgment of $2,425,484.07.

The district court held that Wadsworth agreed to subordinate its lien priority date to other third party liens that attached to the property prior to the date inserted in BRN releases and that this subordination was "for the express benefit" of other lienholders, including the Bank. The district court also held that Wadsworth was not entitled to recover outstanding sums that

5

Wadsworth owed to its unregistered subcontractors, which amounted to $139,756.94. Wadsworth does not challenge these holdings on appeal.

Wadsworth does challenge the district court's finding that Wadsworth had waived its right to a lien for the retainage, which thereby reduced its recovery by $343,985. The district court reasoned that, despite the fact that Wadsworth had submitted its own release in conjunction with its requests for progress payments on many occasions, Wadsworth was contractually obligated to submit the BRN Release with its payment applications and thus waived its right to lien for the retainage.

The district court's award equaled 79.2 percent of its initial claim. Wadsworth sought $270,043.18 in attorney fees and costs. The district court determined that Wadsworth was entitled to recover attorney fees in an amount proportionate to its success and awarded Wadsworth $208,417.47, equaling 79.2 percent of its requested attorney fees.

The Bank appeals, arguing that the district court erred in holding that lien priority is irrelevant when a lien claimant seeks to recover against a lien release bond. The Bank also argues that the district court erred in allowing Wadsworth to recover even though Wadsworth was not duly registered under the ICRA at all times it worked on the project and hired unregistered subcontractors. Wadsworth cross-appeals, arguing that the district court erred in finding that it had waived its right to lien for the unpaid retainage. Wadsworth argues in the alternative that, even if it did waive its rights to retainage by submitting the six BRN Releases, the district court erred by holding that it waived its right to lien for retainage after the date of its final BRN Release. Wadsworth argues that if it is successful in its cross-appeal on the retainage issue, any increase in its recovery should also result in a proportionate increase in the award of attorney fees for the proceedings before the district court. Finally, Wadsworth argues it is entitled to attorney fees on appeal. We reverse.

## II. STANDARD OF REVIEW

It is well established that "[A] motion for summary judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Upon a motion for summary judgment, all controverted facts are liberally construed in favor of the non-moving party. Likewise, all reasonable inferences which can be made from the record shall be made in favor of the party resisting the motion. The burden at all times is upon the moving party to prove the absence of a genuine issue of material fact. However, the plaintiff's case must be anchored

in something more than speculation and a mere scintilla of evidence is not enough to create a genuine issue. If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied. All doubts are to be resolved against the moving party, and the motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people might reach different conclusions.

*G & M Farms v. Funk Irr. Co.*, 119 Idaho 514, 516-17, 808 P.2d 851, 853-54 (1991) (internal citations omitted). "This Court freely reviews the interpretation of a statute and its application to the facts." *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007).

### III. ANALYSIS

**A. The district court erred in finding that the priority of the parties' interests in the property became irrelevant upon the posting of the lien release bond.**

Property encumbered by a mechanic's lien may be unencumbered by posting a bond in lieu of the property. I.C. § 45-518. The Bank argues that when a bond is posted, recovery against the bond is limited to the amount the lien holder would have recovered in a foreclosure action against the property. It further argues that because Wadsworth would have recovered nothing in a foreclosure action, due to its subordinate priority, it should not have been able to recover against the lien release bond. We agree.

"A mechanic's lien of record upon real property may be released upon the posting of a surety bond in the manner provided in sections 45-519 through 45-524, Idaho Code." I.C. § 45-518. Upon petition for release of the bond in the form prescribed by I.C. § 45-520, the court may release the property from the lien, and "[u]pon entry of the order, the lien is released of record in its entirety and for all purposes and the real property, the subject of the lien, is released from the encumbrances of the lien." I.C. § 45-521. The district court held that because posting the lien release bond releases the lien in its entirety and for all purposes, the priority of liens became irrelevant. It noted that "[i]t is difficult to prioritize a lien that no longer exists of record." Thus, the district court held that once the lien release bond was posted, the only remaining issues for trial were the validity and the amount of the lien. However, I.C. § 45-521 is not the only applicable statutory provision.

Resolution of this issue turns on the meaning of one phrase in the mechanic's lien statutes that was included verbatim in the lien release bond filed with the court. Idaho Code section 45-519 provides that the lien release bond must be in substantially the following form:

> WHEREAS, .................... (name of owner, contractor, or other person disputing the lien) desires to give a bond for releasing the following described real

property from that certain claim of mechanic's lien in the sum of $ ..........., recorded ..............., ...., in the office of the recorder in ...................... (name of county where the real property is situated):

(legal description)

NOW, THEREFORE, the undersigned principal and surety do hereby obligate themselves to ........................., (name of claimant) the claimant named in the mechanic's lien, under the conditions prescribed by sections 45-518 through 45-524, Idaho Code, inclusive, in the sum of $ ....... (1-1/2 x claim), from which sum they will pay the claimant such amount as a court of competent jurisdiction may adjudge to have been secured by his lien, with interest, costs and attorney's fees.

IN WITNESS WHEREOF, the principal and surety have executed this bond at ...................., Idaho, on the ......... day of ............, .....

The phrase at issue here is "such amount as a court of competent jurisdiction may adjudge to have been secured by his lien." The meaning of this phrase is a matter of statutory interpretation.

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011) (quoting *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009)). However, "[i]f the words of the statute are subject to more than one meaning, it is ambiguous and we must construe the statute 'to mean what the legislature intended it to mean.' " *KGF Dev., LLC v. City of Ketchum*, 149 Idaho 524, 528, 236 P.3d 1284, 1288 (2010) (quoting *Hayden Lake Fire Protection Dist. v. Alcorn*, 141 Idaho 388, 398–99, 111 P.3d 73, 83–84 (2005)). To determine that intent, the Court will consider "not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history." *Id*.

The district court did not specifically address the meaning of "such amount as a court of competent jurisdiction may adjudge to have been secured by his lien." Rather, it resolved the issue by holding that posting a lien release bond releases the lien of record for all purposes and thus the issue of priority is similarly extinguished. The Bank argues that the plain meaning of the "amount secured" phrase is that a lien claimant is limited to recover against the bond what it

8

could have recovered against the property in a foreclosure action. Wadsworth argues that "amount secured" refers to the amount of the lien, not the amount that could have been recovered in lien foreclosure proceedings. Both parties construe the phrase in a reasonable fashion; thus, the provision is ambiguous. *Ada Cnty. Prosecuting Attorney v. 2007 Legendary Motorcycle*, 154 Idaho 351, ___, 298 P.3d 245, 247 (2013) (citing *Porter v. Bd. of Trustees, Preston School Dist. No. 201*, 141 Idaho 11, 14, 105 P.3d 671, 674 (2004)).

Whether the amount found "to have been secured by his lien" refers to the sufficiency of the security to satisfy the lien or simply the amount of the lien is a matter of first impression. Both parties cite multiple out-of-state cases that purportedly support their positions. The Bank relies heavily on *York Federal Sav. & Loan Ass'n v. William A. Hazel, Inc.*, 506 S.E. 2d 315 (Va. 1998), for the proposition that a lender's priority position can preclude a lien claimant from recovering on a lien release bond. The facts of that case were similar to this case. In *York*, the party seeking enforcement of the lien against the bond argued that priority was not an issue once the bond was posted. It argued that it need only show that the lien was enforceable, not that it was collectible. The court disagreed and held that priority was an important factor to consider when recovering against a lien release bond. However, the Virginia statute differs from the Idaho statute. The Virginia statute provides that recovery on a lien release bond is limited to "the amount for which the same would have been enforceable against the real estate. . . ." Va. Code Ann. § 43-70. This differs from Idaho's provision that limits recovery to "such amount as a court of competent jurisdiction may adjudge to have been secured by his lien . . . ." I.C. § 45-519. While the Virginia statute is more explicit in its limitation, the effect of the Idaho statute is the same.

We believe that the California Supreme Court appropriately focused on the function of a lien release bond:

> [A]uthorities from other jurisdictions have concluded that a cause of action to foreclose a mechanic's lien is substantially the same whether relief is sought against the liened property or against a bond which has been substituted for the property. Thus it has been said that the bond does not change the relation or rights of the parties otherwise than in substituting its obligations for the property subject to the lien, and it was not within the legislative purpose in permitting the substitution to deteriorate the lienor's rights.

*Hutnick v. U.S. Fid. & Guar. Co.*, 763 P.2d 1326, 1330 (Cal. 1988) (internal quotation omitted). We agree that the lien release bond is merely meant to act as substitute security for the real

9

property and does not otherwise affect the rights of interested parties. We are unable to identify a legitimate policy consideration supporting recovery against the property's replacement in those cases where the lien claimant would recover nothing by way of lien foreclosure. Thus, we hold that "such amount as a court of competent jurisdiction may adjudge to have been secured by his lien" is limited to the amount that the lien holder could have recovered against the real property in a foreclosure action.

As previously noted, Wadsworth does not challenge the district court's determination that it expressly subordinated its lien to that of the Bank. Although the Bank suggests that this matter should be remanded "for a factual determination of the amount that Wadsworth's claim of lien was secured by the [p]roperty," we decline to do so. There is no room for dispute that the "amount secured" by Wadsworth's lien was zero, as the foreclosure sale upon the Bank's credit bid left no surplus proceeds available to lien holders with priority behind the Bank. We therefore reverse the district court's determination that Wadsworth was entitled to recover from the lien release bond and vacate the judgment.

This decision makes it unnecessary to address the Bank's remaining arguments on appeal. It is also unnecessary for us to address Wadsworth's cross-appeal, as it is entirely contingent upon its ability to recover against the lien release bond.

## IV. CONCLUSION

We reverse the decision of the district court allowing Wadsworth to recover against the lien release bond and vacate the district court's judgment in favor of Wadsworth. No attorney fees are awarded. Costs to the Bank.


Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES, **CONCUR**.

10